# EXHIBIT I*

*Exhibit I has been redacted in accordance with Local Rule 8.1(a). An unredacted version of Exhibit I has been filed under seal.

JONES DAY

325 JOHN H. MCCONNELL BOULEVARD, SUITE 600
COLUMBUS, OHIO 43215.2673
TELEPHONE: +1.614.469.3939 • FACSIMILE: +1.614.461.4198

DIRECT NUMBER: (614) 281-3865
MRGLADMAN@JONESDAY.COM

November 17, 2021

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ms. Sheryl Maxfield
Director of Commerce
Ohio Department of Commerce
77 South High Street, 20th Floor
Columbus, Ohio 43215

*Re:* *Merril v. Lincoln Electric Holdings, Inc./Computershare Inc.* *(N.D. Ohio Case No. 1:21-CV-811)*

Dear Ms. Maxfield:

This is a supplemental notice by Lincoln Electric Holdings, Inc. ("Lincoln Electric") and Computershare Inc. ("Computershare") pursuant to Ohio Revised Code Section 169.07 of the pendency of the above-referenced proceeding (the "Merril Litigation").

Revised Code Section 169.07(B) provides that the Director of Commerce shall intervene and assume the defense of legal proceedings against a holder related to unclaimed funds that the holder paid to the Director of Commerce. Lincoln Electric and Computershare (Lincoln Electric's agent, who completed the escheatment analysis and compliance filing) satisfy the requirements for the Director of Commerce to intervene and assume the defense of the Merril Litigation as shown by the following enclosed documents, which evidence escheat compliance:

- Lincoln Electric Proof of Direct Deposit of Merril Dividends
- Evidence of last contact date, indicating dormant property in the LECO [redacted]0677 LCD SCREEN PRINTS
- R. Merril Due Diligence Letter
- USPS Tracking Number Screenshot identifying return of mail
- LECO Escheatment Report
- Roger Merril Amended Complaint

The only contact with respect to the property were direct deposits of dividends, as evidenced in the file titled "Lincoln Electric_Proof of Direct Deposit". Under the amended version of Ohio Administrative Code Section 1301:10-1-01, effective February 1, 2018, direct deposits of

dividends no longer serve as a sufficient contact to prevent dormancy. Accordingly, Computershare appropriately identified Mr. Merril's shares as dormant and mailed the required due diligence notification to Mr. Merrill.

The securities at issue were properly escheated, and Lincoln Electric and Computershare were accordingly "relieved of further responsibility for the safe-keeping" of the securities and must be held harmless. Ohio Rev. Code § 169.07(A). The enclosed documentation identifies the dormancy date of Mr. Merril's securities ("LECO [redacted]0677 LCD SCREEN PRINTS"), the properly mailed due diligence letter requesting return receipt ("R. Merril Due Diligence Letter"), the return tracking from the post office ("USPS Tracking Number Screenshot"), and the timely filed compliance report of the shares and related dividends ("LECO Escheatment Report"). Lincoln Electric and Computershare have therefore satisfied all the prerequisites of Ohio Revised Code Section 160.07(B).

As you are aware, Mr. Merril filed his original lawsuit against Lincoln and Computershare in 2020, and we provided an original notice of suit and request for intervention/defense to you. On April 8, 2021, Assistant Attorney General Hilary Damaser acknowledged that the original notice was "properly asserted" but went on to state that "Commerce is asserting the State's sovereign immunity . . . [and] will not enter an appearance and defend Lincoln Electric against the claims asserted in this lawsuit." On April 14, 2021, Lincoln and Computershare notified you that the original proceedings had been dismissed due to failure of service.

Mr. Merril filed a renewed lawsuit against Lincoln and Computershare and served an amended complaint on October 1, 2021. We request confirmation that the Director of Commerce will intervene and assume the defense of legal proceedings against Lincoln Electric and Computershare in the above-referenced matter.

We appreciate your attention to this matter and would be happy to discuss the foregoing if you have any questions.

Sincerely,

Mike Gladman

Michael R. Gladman

cc: Mr. Akil Hardy, Superintendent of Division of Unclaimed Funds (w/ attachments)
Mr. Peter M. Thomas, Chief Legal Counsel (w/o attachments)
Ms. Hilary R. Damaser, Principal Assistant Attorney General (w/o attachments)
Mr. Eythan Gregory, Assistant Attorney General (w/o attachments)

*Date: Friday, 1st January 2021 18:58:53*

COMPUTERSHARE Run/Sess/Date: 622/0000/01-04-2021
LINCOLN ELECTRIC HOLDINGS, INC./LECO Serv Provider/Code: CPU/UNKWN
* SCRIP Enquiry - PAYMENTS----------------------------------------------------------------Page 1
HID: [redacted] Type: IND TIN: [redacted] Key....: MERRIL ROGER L *PI*
N&A: ROGER L MERRIL | 8689 JOHNNYCAKE RIDGE RD | MENTOR OH Post: 44060-6053

| # | Date | Meth | Reference | Net Amt | Status | | Bse | Pd | Acct | Pay Type | Vend |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 07/15/19 | Dir | 00000094 | 5593.00 | Pres | 07/15/19 | USD | USD | D1907 | Dividend | |
| 02 | 04/15/19 | Dir | 00000094 | 5593.00 | Pres | 04/15/19 | USD | USD | D1904 | Dividend | |
| 03 | 01/15/19 | Dir | 00000097 | 5593.00 | Pres | 01/15/19 | USD | USD | D1901 | Dividend | |
| 04 | 10/15/18 | Dir | 00000094 | 4641.00 | Pres | 10/15/18 | USD | USD | D1810 | Dividend | |
| 05 | 07/13/18 | Dir | 00061519 | 4641.00 | Pres | 07/13/18 | USD | USD | Z021D | Dividend | |
| 06 | 04/13/18 | Dir | 00061520 | 4641.00 | Pres | 04/13/18 | USD | USD | Z019D | Dividend | |
| 07 | 01/12/18 | Dir | 00061521 | 4641.00 | Pres | 01/12/18 | USD | USD | Z016D | Dividend | |
| 08 | 10/13/17 | Dir | 00061522 | 4165.00 | Pres | 10/13/17 | USD | USD | Z013D | Dividend | |
| 09 | 07/14/17 | Dir | 00061523 | 4165.00 | Pres | 07/14/17 | USD | USD | Z011D | Dividend | |
| 10 | 04/14/17 | Dir | 00061524 | 4165.00 | Pres | 04/14/17 | USD | USD | Z009D | Dividend | |
| 11 | 01/13/17 | Dir | 00061525 | 4165.00 | Pres | 01/13/17 | USD | USD | Z007D | Dividend | |
| 12 | 10/14/16 | Dir | 00061526 | 3808.00 | Pres | 10/14/16 | USD | USD | Z005D | Dividend | |
| 13 | 07/15/16 | Dir | 00061527 | 3808.00 | Pres | 07/15/16 | USD | USD | Z005D | Dividend | |
| 14 | 04/15/16 | Dir | 00061528 | 3808.00 | Pres | 04/15/16 | USD | USD | Z005D | Dividend | |
| 15 | 01/15/16 | Dir | 00061529 | 3808.00 | Pres | 01/15/16 | USD | USD | Z005D | Dividend | |
| 16 | 10/15/15 | Dir | 00061530 | 3451.00 | Pres | 10/15/15 | USD | USD | Z005D | Dividend | |
| 17 | 07/15/15 | Dir | 00061531 | 3451.00 | Pres | 07/15/15 | USD | USD | Z005D | Dividend | |
| 18 | 04/15/15 | Dir | 00061532 | 3451.00 | Pres | 04/15/15 | USD | USD | Z005D | Dividend | |
| 19 | 01/15/15 | Dir | 00061533 | 3451.00 | Pres | 01/15/15 | USD | USD | Z005D | Dividend | |

*----------------------------------------------------------------------(M)ore
Action..........: 01 Locate....:

LECO [redacted] 0677
ROGER L MERRIL
8689 JOHNNYCAKE RIDGE RD
MENTOR OH 44060-6503

The Last Contact Date of 10/26/2011 when the Return Mail Date was received and posted.



```
csapr1  Computershare SCRIP system  JORDANM1  JordanM1  4 Jan 2021
File  Edit  View  Forms  Fields  Macros  Debug  Tools  Help
COMPUTERSHARE                                              Run/Sess/Date: 622/0000/01-04-2021
LINCOLN ELECTRIC HOLDINGS, INC./LECO                         Serv Provider/Code: CIS/RECEQ
* SCRIP Enquiry | Static Transaction Detail | N&A Changes
 Holder Id: [redacted] 0677  Trans: NAFLG/NAME & ADDRESS (FLAG CHANGE)  Run/Trans:  294/   62661
 Old Name(s) & Address              New Name(s) & Address          User: SahA 00001|A Sahni
 ROGER L MERRIL                       ROGER L MERRIL                           Dates
 8689 JOHNNYCAKE RIDGE RD             8689 JOHNNYCAKE RIDGE RD         Member....: 12/30/1964
 MENTOR OH                            MENTOR OH                                    12/30/1964
                                                                       Birth.....: No date
                                                                                   No date
                                                                       Ret Mail..: No date
                                                                                  *09/25/2019
                                                                       Contact...: 10/26/2011
 Postcde: 44060-6053   Domicile: OH   Postcde: 44060-6053   Domicile: OH           10/26/2011
 e-Mail..:                            e-Mail..:                        Unrest Fr.: No date
                                                                                   No date
        SEC 1stExt Date: No date      No date                          Unrest To.: No date
        SEC 2ndExt Date: No date      No date                                      No date
 ---------------------Holder Attributes----------------------        Last Ann Vote: No date
 Holder Type...: IND IND        Broker Code.:                                      No date
 Pref Currency.:                Broker Cuid.:                        ----Extra Details----
 OCP Status....:                Group Code..:                        *Tax Details Changed
 Contact Type..: L L            Variable Fld:
 Ret Mail Count: 0*3            Namekey Mod.:
 CB Request....:                Pull Code...:
 Alternative Id: [redacted]  [redacted]                              Escheatment Ind:Y Y
 Foreign Tax Id:
 Avg Cost Ind..:      As Of: No date    No date     To: No date    No date
  Action.....:              Locate....:

Extra Details  |  . for TIN/Tax |  > for Contact/Communication | / for Flags
Awaiting keyboard input                                  ENSSTM04  75696  04Jan2021 8:24  REC
8:24 AM
1/4/2021
```

Showing the Last Contact Date of 10/26/2011 when the phone call of 1/14/2020 was received.



```
csapr1  Computershare SCRIP system  JORDANM1  JordanM1  4 Jan 2021
File  Edit  View  Forms  Fields  Macros  Debug  Tools  Help
COMPUTERSHARE                                              Run/Sess/Date: 622/0000/01-04-2021
LINCOLN ELECTRIC HOLDINGS, INC./LECO                         Serv Provider/Code: CIS/RECEQ
* SCRIP Enquiry | Static Transaction Detail | N&A Changes
 Holder Id: [redacted] 0677  Trans: NAFLG/NAME & ADDRESS (FLAG CHANGE)  Run/Trans:  372/  106770
 Old Name(s) & Address              New Name(s) & Address          User: BroL 00011|L Brown
 ROGER L MERRIL                       ROGER L MERRIL                           Dates
 8689 JOHNNYCAKE RIDGE RD             8689 JOHNNYCAKE RIDGE RD         Member....: 12/30/1964
 MENTOR OH                            MENTOR OH                                    12/30/1964
                                                                       Birth.....: No date
                                                                                   No date
                                                                       Ret Mail..: 09/25/2019
                                                                                  *No date
                                                                       Contact...: 10/26/2011
 Postcde: 44060-6053   Domicile: OH   Postcde: 44060-6053   Domicile: OH          *01/14/2020
 e-Mail..:                            e-Mail..:                        Unrest Fr.: No date
                                                                                   No date
        SEC 1stExt Date: No date      No date                          Unrest To.: No date
        SEC 2ndExt Date: No date      No date                                      No date
 ---------------------Holder Attributes----------------------        Last Ann Vote: No date
 Holder Type...: IND IND        Broker Code.:                                      No date
 Pref Currency.:                Broker Cuid.:                        ----Extra Details----
 OCP Status....:                Group Code..:                         Tax Details Present
 Contact Type..: L*S            Variable Fld:
 Ret Mail Count: 3*0            Namekey Mod.:
 CB Request....:                Pull Code...:
 Alternative Id: [redacted]  [redacted]                              Escheatment Ind:Y Y
 Foreign Tax Id:
 Avg Cost Ind..:      As Of: No date    No date     To: No date    No date
  Action.....:              Locate....:

Extra Details  |  . for TIN/Tax |  > for Contact/Communication | / for Flags
Awaiting keyboard input                                  ENSSTM04  75696  04Jan2021 8:25  REC
8:25 AM
1/4/2021
```

## Static Transaction History



csapr1 Computershare SCRIP system JORDANM1 JordanM1 4 Jan 2021

File Edit View Forms Fields Macros Debug Tools Help

COMPUTERSHARE — Run/Sess/Date....: 622/0000/01-04-2021

LINCOLN ELECTRIC HOLDINGS, INC./LECO — Serv Provider/Code: CIS/REGEQ

• SCRIP Enquiry - Static Transaction History

Name(s) & ROGER L MERRIL
Address..: 8689 JOHNNYCAKE RIDGE RD
MENTOR OH

Post/Zip.: 44060-6053

Holder Id: [redacted]0677
TIN......: [redacted]
Name Key.: MERRIL ROGER L
Type.....: IND

Membership Date.........: 12/30/1964
Date First Shareholder.: 12/30/1964
Last Contact Date......: 01/14/2020 (S)
LC Date Update Run #...: 372

| # | Run# | Tran# | Date | Transaction Description | Reference | WorkFlow Id |
|---|---|---|---|---|---|---|
| 1 | 294 | 62661 | 09/25/2019 | MAFLG/NAME & ADDRESS (FLAG CHANGE) | SahA 000010417 | |
| 2 | 294 | 1024848 | 09/25/2019 | #V118/RETURN MAIL | | 19267WF00467327 |
| 3 | 372 | 106770 | 01/14/2020 | MAFLG/NAME & ADDRESS (FLAG CHANGE) | BroL 000111204 | |
| 4 | 372 | 1034930 | 01/14/2020 | #V019/TELEPHONE ENQUIRY | | 20014WF00302269 |
| 5 | 372 | 1034931 | 01/14/2020 | #V019/TELEPHONE ENQUIRY | | 20014WF00298376 |
| 6 | 378 | 1035695 | 01/22/2020 | #V007/GENERAL CORRESPONDENCE | | 20014WF00301451 |
| 7 | 416 | 1041326 | 03/17/2020 | #V007/GENERAL CORRESPONDENCE | | 20070WF00044937 |
| 8 | 425 | 1042431 | 03/30/2020 | #V140/TRANSFERS | | 20085WF00455853 |

Action.....: 1 Locate....:

<Esc> For valid actions; Action HELP available; > For EXTRA details

Awaiting keyboard input

**USPS TRACKING #**

9307 1001 1300 0135 1033 96

000045

ROGER L MERRIL
8689 JOHNNYCAKE RIDGE RD
MENTOR OH 44060-6053

LINCOLN® ELECTRIC

IMPORTANT NOTICE ENCLOSED

Computershare

Computershare
PO Box 505000
Louisville, KY 40233-5000
Within USA, US territories & Canada 1-800-736-3001
Outside USA, US territories & Canada 1-781-575-3100
www.computershare.com/investor

ROGER L MERRIL
8689 JOHNNYCAKE RIDGE RD
MENTOR OH 44060-6053

[redacted]0677

| | |
|---|---|
| Company: | Lincoln Electric Holdings, Inc. |
| State: | OH |
| Property: | 11900.000000 shares |
| | $0.00 cash |

**Date:** **9 July 2019**

## YOUR IMMEDIATE ACTION IS REQUIRED PER OHIO UNCLAIMED PROPERTY LAWS

**Assets in this account are in jeopardy of being transferred to the custody of the above named state (the "State"). It is important to note that many state laws do not consider receiving regular statements and/or electronic transfer of payments to bank accounts to be valid shareholder-initiated activity. Unclaimed property laws of the State mandate that financial institutions and businesses must turn shareholder assets over to their jurisdiction when shareholder-initiated activity, also referred to as "contact", has lapsed after a specified period of time.**

Computershare, as record keeper for the above-named company (the "Company"), maintains records for registered shareholders of the Company. These records include the shareholder name, address, securities holdings and history of shareholder-initiated activity. For the above account (which is listed at the top of this page and begins with the letter "C"), our records indicate there has been no recent shareholder-initiated activity as required by the laws of the State.

**We want to help you protect your assets from being considered unclaimed property as defined by State laws. Please take immediate action to update this account and re-issue any uncashed payments. Contact us via one of the methods below as required by the State. You must contact us within 45 days of the date of the notice.**

**Telephone:** Call us at the phone number listed in the top right corner above and enter your account information into the automated telephone system to update this account and re-issue any uncashed payments.

**Internet:** Visit us at the website listed above. Upon successful login, this account will be updated and you can re-issue any uncashed payments.

**Mail:** Sign and date Section A below, and return this notice so that it is received within 45 days of the date of this notice. Any uncashed payments will automatically be re-issued to you. If the holder is deceased, skip Section A and refer to Section B on the back of this notice.

### SECTION A: VERIFICATION OF HOLDER

**For Individual, Joint and Trust Accounts. Sign and date below.**
NOTE: Accounts registered as businesses, corporations and government agencies require additional documentation. Please refer to the back of this notice for signature box and for more information.

Please keep signature within the box

Date (mm/dd/yyyy)

__ __ / __ __ / __ __ __ __

**If the account address has changed, refer to back of the notice.**

[redacted]0677 19DUE IND LECO

001CS0119_DD Crt_BR 103617_12798/000045/000090/i5

025IWC (Rev. 5/18)

ROGER L MERRIL
8689 JOHNNYCAKE RIDGE RD
MENTOR OH 44060-6053

**For Registered Business, Corporation or Government Agency Signature in Capacity. Sign and date below.**
Corporate Resolution is required.

Please keep signature within box and include capacity (title)

Date (mm/dd/yyyy)

In order to verify the authority of the person signing this notice on behalf of the entity, we require a certified corporate resolution naming the officers authorized to conduct financial transactions on behalf of the company. Note that the certifying signature on the corporate resolution may NOT be the same officer requesting the transaction There are three acceptable types of certified resolutions as follows:

1. An original certification dated within 180 days of the transaction that includes a raised corporate seal of the corporation (if one exists) and signature of the certifying officer.
2. An original certification dated within 180 days of the transaction and, if there is no corporate seal, the resolution must state "NO SEAL" and be signed by the certifying officer, in their capacity, with a Medallion Signature Guarantee by a brokerage firm or financial institution that is a member of a Stock Transfer Association approved Medallion program, such as STAMP, SEMP or MSP.
3. A copy of the original certification dated within 180 days of the transaction certified by a Medallion Guarantee.

## SECTION B: DECEASED HOLDER INSTRUCTIONS

**To the surviving holder (if a joint account), legal or estate representative:**
If the registered holder is deceased, you must call us as soon as possible at the phone number listed on the other side of this notice. Please call within 45 days of the date of this notice; otherwise, these shares/funds will be in jeopardy of being transferred to the custody of the State. Speak with a representative or, if available, use our Automated Telephone System (24 hours a day, 7 days a week) to request a deceased transfer package. Note that the account may contain uncashed checks which should be re-issued. Have this notice available to identify the account when you call.

## SECTION C: CHANGE OF ADDRESS NOTIFICATION

**COMPLETE THIS SECTION *ONLY* IF THE ADDRESS ON THE FRONT OF THIS NOTICE HAS CHANGED.**
Any uncashed checks associated with this account will be re-issued and mailed to your updated address. Please note that this section should not be completed if the holder is deceased.

Street Number | Street Name | Apt./Unit Number

City/Suburb/Town | State | Zip Code

**Frequently Asked Questions**

**Who is Computershare? –** Computershare is the record keeper for the Company. A record keeper is hired by the Company to maintain records of their security owners, which include the name, address, and share/cash balances for the securities held.

**How do I claim property that has already been transferred to the custody of the state?** – Contact your state's Unclaimed Property Division to place a claim. If your property includes shares of stock it may have been liquidated by the State. Once property has been delivered to certain states, all interest, dividends, income, and gain remain with the State, even if the owner reclaims the property.

**I have my dividends reinvested or delivered directly to my bank account. Does that count as "activity" or "contact"?** – Some states do not consider your receipt of a statement or the direct deposit of dividend funds as shareholder initiated "activity" or "contact".

**How do I avoid having my property transferred to the custody of the state?** – The best way to maintain contact is to: 1) respond to this notice, 2) cash your checks timely, 3) access your account at least annually, 4) communicate address changes to Computershare.

2 1 D U E

02BOVB (Rev. 5/18)

Track your package

Data provided by USPS

Tracking number 9307100113000135103396

Tracking number created
July 03, 12:00AM

Package received by USPS

In transit
August 20, 11:43PM
Cleveland Oh Distribution Center

Out for delivery

Delivered

USPS tracking number entered into USPS system as of 1.12.2021

Naupa Client Final Report

| Company I | Holder Id | SSN | Name-Line1 |
|---|---|---|---|
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] 0677 | | ROGER L MERRIL |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |
| LECO | [redacted] | | [redacted] |

| Name-Line2 | Name-Line3 | Name-Line4 | Address-Line1 |
|---|---|---|---|
| | | | [redacted] |
| [redacted] | | | [redacted] |
| | | | [redacted] |
| | | | 8689 JOHNNYCAKE RIDGE RD |
| | | | [redacted] |

| Address-2 | Address-3 | City | State | Zip Code+4 | Dom Code | Country |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| MENTOR OH | | MENTOR | OH | 44060-6053 | 1OH | USA |
| [redacted] | | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

| Date Opened | Date Lost | Last Contact Date | Address Status | Reporting State | Eligible Run Date | Total Shares | Share Value | Payment Totals |
|---|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| 12/30/1964 | 0 | 10/26/2011 | CURRENT | OH | 7/2/2019 | 11900 | $1,002,337.00 | 0 |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

| Total Asset Value | Stop Trade Ind | Stop Cert Ind | Employee Id | Employee Status | T-E Block | Restrict/Legends | Foreign |
|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | |
| $1,002,337.00 | N | | | | | | |
| [redacted] | | | | | | | |

| Email Address | Holder ID |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| | [redacted]0677 |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ROGER MERRIL<br>Plaintiff,<br><br>v.<br><br>COMPUTERSHARE INC., LINCOLN ELECTRIC HOLDINGS, INC.,<br><br>Defendants. | Case. No. 1:21-CV-00811<br><br>JUDGE DAN A. POLSTER |

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Roger Merril brings this action against Defendants Computershare Inc. Lincoln Electric Holdings, Inc. to recover damages for Defendants wrongfully escheatment of shares of Lincoln Electric Holdings, Inc. stock to Ohio, in violation of their duties to Plaintiff, their contractual obligations, and state and federal law. At all times, Defendants knew how to locate and contact Plaintiff. They nevertheless wrongly claimed that Plaintiff had abandoned his stock. As a result of Defendants' wrongful actions, Plaintiff has suffered damages, including but not limited to the loss in valuation increase of the escheated stock, lost revenue from quarterly dividends and negative tax consequence, all of which were completely avoidable absent the wrongful acts of Defendants.

**Parties**

1. Plaintiff Roger Merril is an individual residing the Lake County, Ohio who was a former employee of Lincoln Electric Holdings, Inc. and the owner of shares of Lincoln Electric Holdings Inc. stock through both individual purchase and grant of shares by Lincoln

Electric Holdings, Inc. to their employees.

2. Defendant Computershare Inc. is a corporation formed under the laws of the state of Delaware and is duly registered to do business as a foreign corporation in the State of Ohio. It is a citizen of the State of Delaware. On information and belief, Computershare Inc. has its principal place of business in Canton, Massachusetts acted as the transfer agent of Defendant Lincoln Electric Holdings, Inc. during all relevant periods.

3. Defendant Lincoln Electric Holdings, Inc. ("Lincoln") is an industrial manufacturing company, a citizen of the State of Ohio, is incorporated under the laws of the State of Ohio and is headquartered and has its principal place of business in Cleveland, Ohio. Lincoln stock is traded on the NASDAQ exchange under the symbol LECO.

## <u>Jurisdiction and Venue</u>

4. This Court has federal subject matter jurisdiction over this matter based on the federal questions raised by Plaintiff' federal law claims.

5. The United States District Court for the District of Ohio is the proper venue for this matter pursuant to 28 U.S.C. § 1391 and O.R.C. 2307.382 as Defendants are either residents of this state and/or regularly transact business in this state, offer goods and services in this State, had contracted with Plaintiff (a residence of this State and judicial district) for the provision of services and the tortious acts of Defendants, regardless of the location they were committed, causes injury to a citizen of the State of Ohio located within this jurisdictional district and under 28 U.S.C. § 1331 regarding federal question / federal causes of action.

## <u>Facts</u>

6. Plaintiff was an employee of Defendant Lincoln for in excess of thirty years.

7. Plaintiff, as part of his regular compensation, was awarded shares of Lincoln Stock, and also purchased shares individually.

8. As of October 28, 2019, Plaintiff was the owner of 11,900 shares of stock.

9. Plaintiff received his last dividend check, totaling $5,593.00 in July of 2019.

10. The dividend checks acted as a retirement supplement for Plaintiff.

11. Plaintiff always intended on keeping his shares of Defendant Lincoln until the time of his death, at which time they would pass without negative tax consequence to his heirs through his estate.

12. On information and belief, the Computershare Defendants were contracted by Defendant Lincoln to manage all stock transactions and oversee all necessary paperwork, industry standards and statutory requirements as it applied to the Lincoln stock were met.

13. On information and belief, as part of the agreement with Lincoln, Computershare's agreed to provide services related to the escheatment of Lincoln's abandoned or unclaimed securities.

14. These services included, without limitation, services to locate lost shareholders and to communicate with shareholders to prevent escheatment and services to determine whether Lincoln shares constituted unclaimed property.

15. Plaintiff was and is the intended third-party beneficiaries of Computershare's contract with Lincoln to provide escheat services, including any indemnity provisions set forth therein.

**Plaintiff' Communications with Defendants**

16. On information and belief, Lincoln and periodically sent correspondence to Plaintiff regarding his shares, which Plaintiff received. On information and belief, no correspondence sent to Plaintiff by Lincoln or Computershare was ever returned as undeliverable.

17. In addition, on information and belief, Computershare was required to calculate

and issue dividend checks on behalf of Lincoln, as a regular part of their servicing agreement.

18. At no time was any dividend payment issued to Plaintiff not promptly deposited in his account, and at no time were any payments ever returned.

19. On information and belief, at no time relevant to this litigation did Computershare and/or Lincoln ever receive any indication that Plaintiff was deceased, incapacitated or intended to abandon his shares in Lincoln.

20. In the mid to late summer of 2019, per the instructions of Computershare, Mr. Merril contacted Computershare at the phone number provided by same, and confirmed that he was still the owner of the shares, was at the same address, and that no changes should be made to the account.

21. That any notice provided by Computershare was not sent via certified mail, that no return of service on any certified mail showing receipt by Plaintiff was had, and that Mr. Merril's stock did not qualify as unclaimed property, as he had had sufficient contact within the five years prior to its escheatment to the State of Ohio to remove his stock from the requirements for classification as such.

22. That Plaintiff had one or more direct contacts with Computershare and/or Lincoln Electric during the fiver yar period, including but not limited to a conversation with Computershare representatives in the summer of 2019 that made any classification of his shares in Lincoln Electric as unclaimed funds / abandoned property under Ohio law a violation of the terms of Ohio law.

**Defendants Wrongfully Escheated Plaintiff's Shares**

23. Even though at all relevant times Lincoln and Computershare were aware of the location of Plaintiff, and Plaintiff regular acceptance and deposit of his quarterly dividend check form Defendants, Computershare, acting as the agent of Lincoln, erroneously reported

to the State of Ohio on or between August and October 2019 that 11,900 shares owned by Plaintiff had been "abandoned" and constituted "unclaimed property" and then delivered Plaintiff's 11,900 shares to Ohio on before October 28, 2019. That is, they escheated the shares to Ohio.

24. Upon receipt of the shares, Defendant State of Ohio then proceeded to sell said shares rightfully belonging to Plaintiff, and subsequently issuing Plaintiff a check for the proceeds of the sale, despite Plaintiff having never abandoned his shares and having no desire to liquidate the shares.

25. Computershare states on its website (available at https://www-us.computershare.com/content/download.asp?docId=%7BFFD8EC48-FF06-4700-9176-D42E34B17A84%7D): "State law requires all companies to perform due diligence searches to locate holders at risk of escheatment before declaring their property to be abandoned."

26. On information and belief, Computershare did not perform a due diligence search to locate or communicate with Plaintiff before declaring their property to be abandoned.

27. Under Ohio Law, acceptance of a dividend payment is one of the actions that prevents a property from being declared legally abandoned, which Mr. Merril received in July of 2019.

28. That under Ohio Law, direct contact via letter, email or telephone from the holder of the property prevents property from being deemed abandoned, and Mr. Merril had such contacts in the five year period in question, including but not limited to telephone contact with representatives of Computershare in the summer of 2019.

29. Neither Computershare nor Lincoln ever provided Plaintiff with any notice that his shares in Lincoln actually would be escheated if any particular action was not taken before

Case: 1:21-cv-00801-DAP Doc #: 1 Filed: 04/14/21 6 of 37. PageID #: 6

the shares were escheated, nor did they provide any indication that Mr. Merrril's shares were subject to escheatment under Ohio law.

30. In addition, neither Computershare nor Lincoln ever provided Plaintiff with any notice that his shares were to be escheated before they were escheated.

31. That no certified mailing of such notice was ever had, and no return receipt was ever obtained informing Computershare or Lincoln Electric that he was given notice/

32. Neither Computershare nor Lincoln ever informed or disclosed to the Plaintiff that, in their view, (a) Plaintiff's shares were subject to Ohio's unclaimed property laws, (b) Plaintiff was required to initiate affirmative contact with such Defendants regarding the shares on any periodic basis, or (c) there was even the possibility that, under certain circumstances, Plaintiff's shares could be deemed abandoned property and escheated to the State of Ohio.

33. Neither Computershare nor Lincoln disclosed to Plaintiff that there had been any change in Ohio's unclaimed property laws that, in their view, would result in the automatic escheat of Plaintiff's shares unless immediate action was taken.

34. Computershare sent periodic securities account statements to shareholders during the relevant period that state: "This advice is your record of the share transaction affecting your account on the books of the Company. … It should be kept with your important documents as a record of your ownership of these shares. ***No action on your part is required***, unless you wish to deposit your existing certificates, sell or request a certificate, or transfer your book-entry shares." (Emphasis added.)

35. At no time did Ohio attempt to contact Plaintiff to notify him that his shares had been escheated or to attempt to return their shares to him before selling Plaintiff's shares

**Count I: Negligence**
**(Against All Defendants)**

36. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

37. Computershare and Lincoln owed Plaintiff duties to, among other things, account properly for the status of Plaintiff's shares, exercise due care and diligence in exercising control over the disposition of Plaintiff's shares, and manage and handle Plaintiff' shares in a manner that complied fully with federal and Ohio law.

38. Computershare and Lincoln breached their duties to Plaintiff by wrongfully escheating Plaintiff' shares in Lincoln to the State of Ohio.

39. That this wrongful escheatment included, but was not limited to the failure to properly document telephone contacts with Plaintiff, the failure to send notice of intended escheatment per certified mail and the failure to confirm Mr. Merril's address through a public records search.

40. The Ohio Escheats Law, notices of property deemed to have been abandoned must be sent via certified mail if the property, as in this case, has a value in excess of $1000.00.

41. The Ohio Escheats Law also requires that two of the following three forms of verification of contact with the owner be kept before deeming property abandoned, a failure to respond to a letter via first class mail, along with the notice of abandoned property, the return of a first class letter as undeliverable and an electronic and/or manual search of public records failed to verify the last known address of the property holder.

42. The escheat of Plaintiff's shares is also contrary to the federal common law rules adopted by the United States Supreme Court for determining when states have the right and jurisdiction to escheat unclaimed intangible property.

43. Even if Ohio law were applicable to Plaintiff's shares, Computershare and Lincoln erroneously applied the incorrect standard for escheat. Furthermore, even under that standard, Plaintiff's shares would not have been escheatable because Plaintiff did in fact have contact with Lincoln with respect to his shares during the three-year period prior to the date his shares were escheated.

44. Computershare and Lincoln also breached their duties to Plaintiff by failing to conduct due diligence to determine, among other things, (a) whether Plaintiff' shares were actually abandoned, (b) the date of Plaintiff' last contact with Lincoln, specifically the last date of acceptance of a dividend payment by Plaintiff and (c) whether the Ohio Escheat Law applied to Plaintiff's shares at all.

45. Computershare and Lincoln also breached their duties to Plaintiff by failing to contact Plaintiff with respect to his shares, even though such Defendants knew how to contact Plaintiff, and by failing to notify Plaintiff of their intent to escheat Plaintiff' shares in the (supposed) absence of such contact or other action.

46. Computershare also breached its duties by failing to inquire with Lincoln regarding Plaintiff's contacts and relationship with Lincoln and other facts that would be relevant to determining whether Plaintiff had abandoned his shares.

47. Lincoln also breached its duties by failing to inform Computershare of such contacts and relationship and other relevant facts.

48. Computershare and Lincoln also breached their duties to Plaintiff by (a) failing to notify Plaintiff that they intended to escheat his shares to the State of Ohio and (b) failing to notify Plaintiff that the shares had in fact been escheated.

49. Computershare and Lincoln also breached their duties to Plaintiff by failing to

disclose to Plaintiff in any document that (a) Defendants believed Plaintiff' shares could even potentially be escheated to a state under certain circumstances, (b) Ohio's Escheats Law applied to Plaintiff's shares, or (c) there was a change in law in Ohio that, in such Defendants' view, would result in the automatic escheat of Plaintiff' shares unless immediate action was taken.

50. Computershare's and Lincoln's actions in escheating Plaintiff' shares to Ohio did not meet reasonable commercial standards of practice in the securities industry.

51. As a result of Computershare's and Lincoln's negligence, Plaintiff has been deprived of his quarterly dividend check, has had his estate planning process circumvented by third party actors, has been subjected to unnecessary and completely avoidable capital gains tax and has been damaged in an amount to be proven at trial, said amount being not less than $75,000.00

**Count II: Violation of Ohio Consumer Sales Act (Against All Defendants)**

52. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

53. By their acts and omissions set forth in detail above, Computershare and Lincoln recklessly, willfully and knowingly engaged in unfair and/or deceptive acts and/or practices in violation of the Ohio General Laws.

54. These acts and omissions include, without limitation, (a) Computershare's and Lincoln's wrongful escheat of Plaintiff's shares, (b) Computershare's and Lincoln's failure to notify Plaintiff that they intended to escheat his shares to the State of Ohio, or contact Plaintiff to prevent (in such Defendants' view) such escheatment, (d) Computershare's and Lincoln's

failure to notify Plaintiff that his shares had in fact been escheated, (e) Computershare's and Lincoln's misrepresentation to Plaintiff that his shares had been escheated to Ohio, which misrepresentation caused a delay of approximately sixteen months in Plaintiff' attempts to recover his shares, (f) Computershare's and Lincoln's failure to disclose to Plaintiff that such Defendants believed Plaintiff's shares could even potentially be escheated to a state under certain circumstances, or that there was a change in law in Ohio that, in such Defendants' view, would result in the automatic escheat of Plaintiff' shares unless immediate action was taken, (g) Computershare's and Lincoln's failure to notify Plaintiff that his shares were about to be, or had in fact been, escheated to Ohio, (h) Computershare's and Lincoln's failure to provide sufficient information to Ohio to enable it to return Plaintiff' shares to him and (i) Computershare's false declaration to the State of Ohio that Mr. Merril's shares of Lincoln Electric stock were deemed unclaimed funds / abandoned property under Ohio law..

55. Computershare's and Lincoln's acts and omissions set forth above were done recklessly, willfully and knowingly.

56. These actions occurred substantially in and from Ohio, where both Lincoln and Computershare are located.

57. Had Computershare or Lincoln advised, notified or made adequate disclosures to Plaintiff as it should have, Plaintiff would have taken steps to protect their substantial interests and to ensure that their shares would not be escheated.

58. As a result of Computershare's and Lincoln's acts and omissions, Plaintiff have been damaged in an amount to be proven at trial, said amount being not less than $75,000.00.

**Count III: Conversion**
**(Against All Defendants)**

59. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

60. Plaintiff owned a combined total of 11,900 shares in Lincoln prior to the time that Computershare and Lincoln wrongfully escheated their shares to the State of Ohio.

61. In wrongfully escheating the shares, Computershare and Lincoln exercised ownership, control, and/or dominion over Plaintiff's property, to which they had no right of possession, thereby depriving Plaintiff of his valuable property.

62. As a result of Computershare's and Lincoln's conversion, Plaintiff has been damaged in an amount to be proven at trial, said amount being not less than $75,000.00.

**Count IV: Breach of Contract**
**(Against All Defendants)**

63. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

64. Lincoln is required to comply with any escheat or unclaimed property laws that apply to abandoned or unclaimed securities that it issues. Under such laws, Lincoln has a duty to communicate periodically with its shareholders to prevent their shares from being escheated.

65. On information and belief, Lincoln contracted with Computershare to provide transfer agent services, including services related to the escheatment of Lincoln's abandoned or unclaimed securities. These services included, without limitation, services to locate lost shareholders and to communicate with shareholders to prevent escheatment and services to determine whether Lincoln shares constituted unclaimed property.

66. The shareholders of Lincoln , including Plaintiff, were and are, as matter of law, the intended third-party beneficiaries of the contract, including any indemnity provisions set forth therein.

67. That the obligation to properly maintain Plaintiff's shares and to take no improper action regarding the shares flowed from Computershare to Lincoln and from

Lincoln to Defendant.

68. At the time of the acts and omissions complained of herein, Computershare was a duly authorized agent of Lincoln Electric.

69. That Lincoln, in the sale of shares of its company to Plaintiff, entered into a contract that did not permit them to terminate his ownership interest in Lincoln Electric absent certain narrowly defined exceptions, which were not present at the time his shares were escheated to the State of Ohio.

70. That at the time of the wrongful actions of Defendants complained of herein, Lincoln Electric and Computershare were in a master and servant relationship with regards to the maintenance of shares of Lincoln Electric stock.

71. By Computershare's acts and omissions set forth herein, including but not limited to its wrongful escheatment of Plaintiff's shares to the State of Ohio and its failure to provide notice of such escheatment to Plaintiff, Computershare breached its duties under the contract with Lincoln.

72. Computershare also breached its duties by failing to inquire with Lincoln regarding Plaintiff's contacts and relationship with Lincoln and other facts that would be relevant to determining whether Plaintiff had abandoned his shares.

73. Lincoln also breached its duties by failing to inform Computershare of Plaintiff's contacts and relationship and other such relevant facts.

74. As a result of Computershare's breach of contract, Plaintiff have been damaged in an amount not less than $75,000.00

**Count V: Breach of the Implied Covenant of Good Faith and Fair Dealing (Against All Defendants)**

75. Plaintiff incorporate by reference all the foregoing paragraphs above as though

fully set forth herein.

76. On information and belief, Lincoln contracted with Computershare to provide transfer agent services, including services related to the escheatment of abandoned or unclaimed securities.

77. By wrongfully escheating Plaintiff's shares and failing to notify Plaintiff of the potential or actual escheat of his shares, and for other reasons set forth herein, Computershare and Lincoln breached the implied covenant of good faith and fair dealing, resulting in harm to Plaintiff.

78. Computershare also breached the implied covenant of good faith and fair dealing by failing to inquire with Lincoln regarding Plaintiff's contacts and relationship with Lincoln and other facts that would be relevant to determining whether Plaintiff had abandoned his shares, and by failing to notify Plaintiff via certified mail return receipt requested of the intention to deem the shares abandoned, by failing to confirm the return receipt of said letter, by failing to conduct a public records search to confirm Mr. Merril's requisite information, by failing to accurately document his telephonic, email and written contacts with Computershare with regards to his stock and by wrongfully representing to the State of Ohio that Mr. Merril's stock qualified as abandoned property / unclaimed funds under Ohio law..

79. In addition, Lincoln also breached the implied covenant of good faith and fair dealing by failing to provide necessary reports to Computershare regarding of Plaintiff's contacts and relationship with Lincoln, and by failing to provide necessary information and disclosures to Lincoln's shareholders, as well as the other acts and omissions described herein.

80. Both Computershare's and Lincoln's actions and inactions deprived Plaintiff of the fruits of the contract, unfairly interfering with the rights of Plaintiff, the third-party beneficiaries, to receive the benefits of the contract.

81. As a result of Computershare's and Lincoln's breaches of the implied covenant of good faith and fair dealing, Plaintiff have been damaged in an amount not less than $75,000.00.

**Count VI: Breach of Fiduciary Duty**
**(Against All Defendants)**

82. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

83. Lincoln and its officers or directors had fiduciary duties to Plaintiff to, among other things, safeguard and protect Plaintiff's shares, maintain accurate books and records regarding Plaintiff' ownership of shares, not make untrue statements of material facts or conceal material facts, or engage in any practice or course of business that would operate as a deceit.

84. Lincoln and its officers and directors breached those duties by, among other things, (a) erroneously determining that shares owned by Plaintiff were abandoned and thus escheatable; (b) wrongfully escheating Plaintiff' shares in violation of law; (c) failing to notify Plaintiff of such escheat; (d) failing to maintain accurate books and records regarding Plaintiff's ownership of shares; (e) failing to convey such information to Computershare, its transfer agent; and (f) failing to make disclosures to Plaintiff of material facts. .

85. Lincoln knew or should have known that Plaintiff had not abandoned his shares for a number of reasons, including that Plaintiff or his principals had regular contact with Lincoln and was a key participant in Lincoln's business.

86. Computershare, based on the phone contact with Mr. Merrill, knew or should have known that there were no grounds for the escheatment of his shares in Lincoln Electric.

87. That Computershare, as the holder and/or controller of Plaintiffs shares in Lincoln Electric had a duty to ensure that the shares were not transferred, liquidated or to take

any other action without Plaintiff's consent.

88. That as the agent for Lincoln and the holder of Mr. Merril's shares, Computershare had a fiduciary duty to protect said shares.

89. That in failing to properly identify Mr. Merril as an active holder of shares, and subsequently escheating the shares, Computershare breached its fiduciary duty to Mr. Merril.

90. As a result of Lincoln's breach, Plaintiff have been damaged in an amount not less than $75,000.00.

**Count VII: Violation of 15 U.S.C. §§ 77a-77bbb, 78a-78hh (Federal Securities Laws) (Against All Defendants)**

91. Plaintiff incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

92. The Securities Act of 1933 (15 U.S.C. §§ 77a-77bbb) (the "1933 Act") and the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78a-78hh) (the "1934 Act") are designed specifically to protect Plaintiff and his stock investments. (The 1933 Act and the 1934 Act are collectively referred to as the "Federal Securities Laws.")

93. The Federal Securities Laws, including Sections 11 and 12(1), 12(2), 13(e) of the 1933 Act, and Sections 10b, 13(e), 13e-3, 14(a), 14(e), 15(c)(1), 16(b), and 18 of the 1934 Act, guarantee Plaintiff the right, among other things, to transfer his shares of stock as he pleases, to receive material information on his investments, and to vote on shareholder issues. The Federal Securities Laws further specify that a fiduciary relationship exists and runs from the corporation to stock investors like Plaintiff. Defendants' conduct interfered with the federal securities protections designed to protect Plaintiff.

94. The improper escheat of Plaintiff's shares by Computershare and Lincoln without proper notice and due process violates and directly interferes with the application of the Federal

Securities Laws.

95. Specifically, among other violations of the Federal Securities Laws, Computershare and Lincoln violated §10(b) of the Exchange Act and Rule 10b-5 inasmuch as they intentionally or recklessly and in conscious disregard of the law engaged in the acts, practices and omissions previously alleged, including:

(a) employing devices, schemes and artifices to wrongfully deprive Plaintiff of his shares;

(b) making untrue statements of material facts (for example, that Plaintiff' shares were escheated to Ohio) or omitting to state material facts necessary in order to make the statements made not misleading in light of the circumstances under which they were made, including but not limited to (a) Computershare's and Lincoln's failure to notify Plaintiff that, in their view, the Ohio's Escheats Law applied to Plaintiff's shares in Lincoln and that Plaintiff must, therefore, familiarize himself and comport himself with that law with respect to their shares, (b) Computershare's and Lincoln's failure to notify Plaintiff that changes had been made to Ohio's unclaimed property laws that, in their view, would result in the automatic escheat of Plaintiff's shares unless immediate action was taken, (c) Computershare's and Lincoln's failure to notify Plaintiff that his shares had in fact been escheated, and (d) Computershare's and Lincoln's failure to notify Plaintiff that his shares were about to be, or had in fact been, escheated to Ohio; and (e) failing to identify Mr. Merril as an active customer after the phone call of summer 2019 by Mr. Merril.

(c) engaging in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff, including escheating Plaintiff's shares even though Computershare and Lincoln knew or should have known that the shares were not abandoned

and even though Computershare and Lincoln at all times knew how to contact Plaintiff with respect to his shares.

96. Computershare and Lincoln, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, recklessly and in conscious disregard of the law engaged and participated in a continuous course of conduct that concealed material information about the proper status of Plaintiff's shares as specified herein or the applicable law governing them.

97. As a result of Computershare's and Lincoln's acts and omissions and violations of the Federal Securities Laws, Plaintiff has been damaged in an amount not less than $75,000.00.

**Count VIII: Violations of 42 U.S.C. § 183 (Against All Defendants)**

98. Plaintiff incorporates by reference all the foregoing paragraphs above as though fully set forth herein.

99. Plaintiff was the rightful owner of 11,900 Lincoln shares escheated by Computershare and Lincoln to Ohio. Plaintiff had a property interest in the shares escheated to Ohio.

100. Computershare and Lincoln claim to have escheated Plaintiff's shares pursuant to the Ohio Escheats Law.

101. The escheat of unclaimed property is an exercise of the state's sovereign authority and, as such, is an exclusively public function.

102. That Lincoln Electric and Comptuershare claim they were compelled to do so by Ohio State law.

103. That Lincoln Electric and Computershare took said actions under the color of

state law.

104. That but for the actions of Lincoln Electric and Computershare in their wrongful and negligent enforcement of Ohio State law in deeming Mr. Merril's shares of Lincoln Electric stock to be abandoned property / unclaimed funds and the further wrongful and negligent escheatment of said shares to the State of Ohio without adhering to the procedures designated under Ohio State law, Mr. Merril would still be in possession of his shares today.

105. That but for the actions of Computershare and Lincoln Electric, there was no other vehicle to authorize escheatment of Mr. Merril's shares of stock to the State of Ohio.

106. To the extent that Ohio law requires escheat of Plaintiff's shares, Ohio was directly involved in, and was responsible for, the actions taken by Computershare and Lincoln in not only purportedly requiring the escheat of the shares under its Escheats Law, but also validating the escheat of Plaintiff' shares by receiving and subsequently selling the shares.

107. In escheating Plaintiff' shares, Computershare and Lincoln acted in close nexus with Ohio and had a symbiotic and intertwined relationship with Ohio, as Ohio's ability to escheat the shares was necessarily dependent on, and required, Computershare's and Lincoln's actions. Ohio, Computershare and Lincoln thus jointly participated in the escheat of the shares.

108. Computershare's and Lincoln's actions in escheating Plaintiff's shares constituted an integral part of Ohio's escheat system without which Ohio's escheat system could not function.

109. Ohio encouraged and coerced Computershare's and Lincoln's conduct by subjecting Computershare and Lincoln to penalties for any failures to comply with the Ohio Escheats Law. As such, any provisions of the Ohio Escheats Law, or any other guidance released by Ohio that purports to require the escheat of Plaintiff's shares constitutes an

affirmative command by Ohio for Computershare and Lincoln to escheat Plaintiff's shares.

110. Thus, Computershare and Lincoln acted under the color of law when they escheated Plaintiff's shares to Ohio.

111. In escheating Plaintiff's shares to Ohio, particularly without notice of the escheat or of any change in the Ohio Escheats Law that would purportedly result in the automatic escheat of Plaintiff's shares, Computershare and Lincoln, acting under color of law, effected a deprivation and taking of Plaintiff's property without due process of law as required under the Fourteenth Amendment to the United States Constitution.

112. Furthermore, under federal common law rules created by the United States Supreme Court for determining when states have the right and jurisdiction to escheat unclaimed intangible property, the State of Ohio had no right or jurisdiction to escheat Plaintiff's shares because Plaintiff's shares were owned by foreign persons. Courts have held that states may not escheat unclaimed property in a manner contrary to these rules. Accordingly, under these federal common law rules, Plaintiff has a federally protected right that their shares may not be escheated by any state, including Ohio.

113. Similarly, under the Commerce Clause of the United States Constitution, Plaintiff has a federally protected right to expect that his shares would be regulated by Congress, if at all, rather than by any individual state. As a result, Plaintiff has a federally protected right to expect that his shares would not be subject to escheat by any state, including Ohio.

114. Ohio also did not have the right to escheat Plaintiff' shares because, among other reasons, Plaintiff had not abandoned his shares, Computershare and Lincoln knew how to find and contact Plaintiff, and Plaintiff had affirmative contact with Lincoln regarding his shares,

including in the three years prior to the date of escheatment.

115. Computershare's and Lincoln's conduct caused Plaintiff to sustain damages in an amount to be proven at trial, said amount being in excess of $75,000.00.

## **Prayer For Relief**

WHEREFORE, Plaintiff request the following relief:

1. Award Plaintiff damages, costs, attorneys' fees, and pre-judgment and post-judgment interest, as permitted by applicable law;

2. Award Plaintiff trebble damages and attorneys' fees pursuant to Ohio law.

3. Award Plaintiff attorneys' fees and punitive damages pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988; and

4. Award Plaintiff such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury of the maximum number on all issues heretofore pled.

PLAINTIFF, ROGER MERRIL,
By and through His Attorneys,

/s/ Jay F. Crook
Jay F. Crook #0078499
Jay F. Crook Attorney at Law, LLC
30601 Euclid Avenue
Wickliffe, OH 44092
PH: 440-944-7020
FAX: 440-943-3096
EMAIL: jay.crook@euclidavelaw.com

/s/ John W. Shryock
John W. Shryock (0031277)
John Shryock Co. LPA
30601 Euclid Avenue
Wickliffe, OH 44092

440-944-7020
FAX: 440-943-3096
john@lawsjws.com

CERTIFICATE OF SERVICE

Notice of filing of the foregoing was made through the function of this Court's ECF system, with a copy being made available to all parties through same.

/s/ Jay F. Crook
Jay F. Crook #0078499